IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEREMY GOOD,

        Plaintiff,

        v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

        Defendant.

No. 3:15-cv-00304-ST

OPINION AND ORDER

STEWART, Judge:

        Plaintiff, Jeremy Good ("Good"), seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 USC § 1383(c)(3). All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #5).

        For the reasons set forth below, the Commissioner's decision is reversed and remanded for further proceedings.

1 – OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Good filed an application for SSI on November 30, 2011, alleging a disability onset date of December 1, 2008. Tr. 155-60.[1] Following a denial of benefits initially and upon reconsideration, Good requested a hearing before an administrative law judge ("ALJ"). Tr. 75-106, 110-12. ALJ Rudolph Murgo held a hearing on October 17, 2013. Tr. 35-74. On November 1, 2013, the ALJ issued a decision finding that Good was not disabled as of November 30, 2011, the date the application was filed.[2] Tr. 18-29. The Appeals Council then denied Good's request for review. Tr. 1-4. This appeal followed.

## BACKGROUND

Born in 1990 (Tr. 165), Good was a "younger individual" at all times relevant to his claim. *See* Tr. 75; 20 CFR § 416.963(c). He received a modified high school diploma and has no past relevant work history. Tr. 27, 40. Good alleges that he is disabled due to the combined impairments of psychosis, anxiety, depression, and schizophrenia. Tr. 169.

## ALJ'S FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to

---

[1] Citations are to the page(s) indicated in the official transcript of the record filed on July 2, 2015 (docket #14).

[2] The ALJ appropriately considered evidence prior to the application date. Tr. 18 ("Although [SSI] is not payable prior to the month following the month in which the application was filed (20 CFR 416.335), I have considered the complete medical history consistent with 20 CFR 416.912(d)."); *see Wetzel v. Colvin*, 2015 WL 4488347 at *11 (MD Penn. July 23, 2015), citing 20 CFR 416.912(d) and 20 CFR 404.1512(d) ("[N]on-contemporaneous evidence can be highly relevant to a period adjudicated by the ALJ. In fact, the Regulations and case law require the ALJ to evaluate the medical records for at least twelve months prior to an application for SSI, even though benefits for SSI may not be awarded until the month after the application).

determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 404.1520; *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999).

At step one, the ALJ concluded that Good has not engaged in substantial gainful activity since November 30, 2011. Tr. 20.

At step two, the ALJ found that Good has the severe impairments of schizophrenia and "other psychotic disorder and anxiety disorder." *Id.*

At step three, the ALJ concluded that Good does not have an impairment or combination of impairments that meets or equals any of the listed impairments. *Id*. The ALJ then found that Good has the residual functional capacity ("RFC") to perform a full range of work with the following nonexertional limitations: limited to simple, routine tasks (SVP 1 and 2 type classes) and occasional public and coworker contact "meaning no more than one-third" of the time. Tr. 22.

At step four, the ALJ found that Good had no past relevant work. Tr. 27.

At step five, considering Good's age, education, work experience, and RFC and based upon the testimony of a vocational expert ("VE"), the ALJ determined that Good was capable of performing such jobs as a dish washer, car lot attendant, and warehouse checker. Tr. 27-28.

Accordingly, the ALJ determined that Good was not disabled since November 30, 2011. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F3d 1153, 1159 (9th Cir 2012), quoting *Sandgathe v. Chater*, 108 F3d 978, 980 (9th Cir 1997). To determine whether substantial evidence exists, the court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Garrison v. Colvin*, 759 F3d 995, 1009-10 (9th Cir 2014), citing *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007).

## DISCUSSION

Good argues that the ALJ erred by: (1) failing to consider the "other source" opinions contained in his educational and vocational records; (2) failing to evaluate the opinion of the reviewing psychologist; (3) failing to include all limitations supported by the record in the RFC; and (4) finding his subjective testimony not credible.

### I. "Other Source" Evidence

#### A. Legal Standard

Evidence from "other sources," including "[e]ducational personnel (for example, school teachers, counselors, early intervention team members, developmental center workers, and daycare workers)," as well as "public and private social welfare agency personnel," may be used to show the severity of a claimant's impairments and how they affect his ability to work. 20 CFR § 404.1513(d). An ALJ must give at least one "germane" reason for discounting the opinion of an "other source." *Molina v. Astrue*, 674 F3d 1104, 1111 (9th Cir 2012) (citations omitted).

#### B. Educational Records

Good argues that because his educational records show he has long-term deficits in his ability to function consistently and appropriately, the ALJ erred by failing to consider them. In

support, Good cites his school records from 2003 and 2004 in which he reportedly "threatened to bring a knife to school" and "threatened to cut a staff member's throat." Tr. 262. He also cites records from 2006 in which Lin Reichhoff, LCSW, set goals for him to be respectful towards peers and staff 80% of the time and opined that he would benefit from a highly structured environment with intensive adult support and continual feedback. Tr. 258, 265. Ms. Reichhoff's opinion was cosigned by Dr. John M. Deeney, MD. Tr. 259, 266. Good's records from 2009 state that his educational progress was "hindered by absences and general disinterest and lack of assignment completion." Tr. 245. In 2011, his teacher, Lindsay Polk, opined that he had difficulty following through on tasks in a timely manner and that his anxiety hindered his scholastic success. Tr. 616. In 2011 and 2012, Ms. Polk set educational goals for him, indicating that he would benefit from an educational program that would accommodate absences and limited productivity due to his anxiety and that he "can be very successful for a period of time, [but] then . . . be combative, irritable, and noncompliant." Tr. 200, 616.

The Commissioner concedes that the ALJ erred by not discussing Good's educational records. An ALJ "must make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739 F2d 1393, 1394 (9th Cir 1984) (citation omitted). While an ALJ "need not discuss *all* evidence presented, . . . she must explain why 'significant probative evidence has been rejected.'" *Id* at 1394-95 (emphasis in original), quoting *Cotter v. Harris*, 642 F2d 700, 706 (3d Cir 1981). The Commissioner argues that the error was harmless because a number of records predating both the application date and Good's subsequent successful treatment regimen are of limited relevance and do not establish limitations inconsistent with the RFC.

///

5 – OPINION AND ORDER

Opinions that predate the alleged onset of disability are of limited relevance. *Carmickle v. Comm'r*, 533 F3d 1155, 1165 (9th Cir 2008), citing *Fair v. Bowen,* 885 F2d 597, 600 (9th Cir 1989).  While some of Good's education records from 2006 and 2009 predate the alleged onset of disability, later records from 2011 and 2012 fall within the relevant time period.  Good's educational records are significant and probative because they demonstrate limitations in his social functioning, persistence, task completion, and attendance that are potentially greater than the limitations in the RFC.  For example, the VE testified that someone who was off-task or unable to respond appropriately to instruction and criticism from a supervisor 20% or more of the time, or is absent more than two days per month, would be unable to keep a job.  Tr. 71-73. Throughout the educational records, Ms. Reichhoff and Ms. Polk identified deficiencies in Good's social functioning, persistence, and task completion, and set goals for him to be respectful towards peers and staff and to consistently complete work on time 80% of the time. Tr. 245, 257, 265, 616, 620.  Moreover, records from 2009 reveal that Good's progress was hindered by attendance problems and a lack of completed assignments.  Tr. 245.  Although the noted limitations occurred in an educational setting, they demonstrate limitations that, according to the VE, would be intolerable in an employment setting.  Ms. Polk concluded that Good's "overall employment success will likely be dictated by continued counseling support and a consistent sleep schedule." Tr. 200.  Educational records are especially relevant in this case where Good was still in school during the alleged onset date and has no work history.  *See* Tr. 40 (high school diploma earned in 2012).

The Commissioner also argues that the error was harmless because the ALJ mentioned his educational records at the hearing.  Tr. 40.  "[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot

consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r, Social Sec. Admin.*, 454 F3d 1050, 1056 (2006).  When fully crediting the evidence in the educational records of Good's frequent absence, it would be reasonable find him disabled based on the VE's testimony.  Because the court cannot confidently conclude that no reasonable ALJ, when fully considering Good's educational records, could have reached a different disability determination, the ALJ's failure to consider them constitutes harmful error.

### C. Vocational Records

Good argues that the ALJ also erred by failing to consider his vocational records which show that the same limitations identified in school continued to affect his job aptitude.  In 2013, Good's vocational counselor, Ken Smith, MS, CRC, opined that Good would have "[d]ifficulty sustaining attention, focus, and concentration," "[m]ay have recurring episodes of mental illness that cause unplanned absences," is "[n]ot stress hardy and more apt to decompensate with stress and pressure," and "[l]acks confidence in [his] own dependability."  Tr. 282.  Mr. Smith ultimately decided to put his case on hold and opined that "[i]t is apparent we have overestimated [Good's] job readiness and underestimated his need for on-going supports."  Tr. 297.

The Commissioner concedes that the ALJ did not evaluate the vocational records or Mr. Smith's opinion, but argues that any error was harmless because the ALJ acknowledged these records at the hearing and because Mr. Smith did not assess any limitations inconsistent with the RFC.  Tr. 41, 43-44.

The ALJ's acknowledgement of Good's vocational training at the hearing does not satisfy the requirement of explaining why "probative evidence has been rejected."  *Vincent*, 739 F2d at 1395.  Similar to the education records, Good's vocational records are significant and probative

because they call into question Good's ability to sustain attention, focus, and concentration, and to not have excessive, unplanned absences, which as stated above, the VE opined would be a barrier to maintaining employment. Tr. 71-73. Accordingly, the ALJ's failure to discuss the vocational records and Mr. Smith's opinions contained in them constitutes harmful error.

## II.     Medical Opinion

Good argues that the ALJ erred by failing to evaluate the most current and relevant medical opinion from the reviewing psychologist, Mary Lee Nichols, PhD. Dr. Nichols opined on May 7, 2013, that Good "[m]anipulates others by making self-harm gestures and behaviors," is "[v]ulnerable to psychosocial stressors . . . [and] cognitive errors," has a "[l]ong history of anxiety in social situations," has "[d]ifficulty sustaining attention, focus, and concentration," is "[n]ot stress hardy and more apt to decompensate with stress and pressure," and has a "[h]istory of behaviors that put [him]self or others at serious risk." Tr. 305. Moreover, Dr. Nichols observed that it is "[u]nclear how well [Good] can sustain motivation, ability to interact with others, and sustain effort." *Id.* She opined that Good "will need a placement with limited stress, and clear expectations regarding appropriate behavior and transparency of task completion requirements," and "will require assistance and preparation for every step toward attaining and training for the required tasks." *Id.*

Good argues that, according to Dr. Nichols, he has functional limitations that are more restrictive than the ALJ included in his RFC. The Commissioner concedes that the ALJ erred by failing to evaluate Dr. Nichols's opinion, but avers that any error is harmless because the RFC is consistent with Dr. Nichols's review.

Specifically, the Commissioner argues that the limitations identified by Dr. Nichols of anxiety in social situations and impaired social relationships is reflected in the RFC's limitation of only occasional contact with co-workers and the public. The Commissioner also argues that

8 – OPINION AND ORDER

Dr. Nichols's assessment that Good had difficulty sustaining attention, focus, and concentration is not inconsistent with the ALJ's finding that Good has "fair concentration" (Tr. 21), the RFC limiting Good to "simple routine tasks" (Tr. 26), or the August 29, 2012 opinion by the reviewing "mental consultant," Kordell N. Kennemer, PsyD, that Good could "sustain attention to do simple/routine tasks without limitation" but not "more complex tasks." *Id*, citing Tr. 93. Finally, the Commissioner argues that the ALJ accounted for Good's stress in the RFC by limiting him to routine work, consistent with Dr. Kennemer's determination that Good had some moderate adaption limitations, including limitations in responding appropriately to changes in the work setting. *Id*, citing Tr. 93-94. In addition, the ALJ adopted the May 12, 2012 opinion by the reviewing psychologist, Bill Hennings, PhD, that although Good was at risk of decompensation, he "appears capable of the increased mental demands of work participation." *Id*, citing Tr. 82.

The ALJ must evaluate every medical opinion. 20 CFR § 416.927(b)-(c). An ALJ can accomplish this by "'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F3d at 1012, quoting *Reddick v. Chater*, 157 F3d 715, 725 (9th Cir 1998). The ALJ is "'not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" *Reddick*, 157 F3d at 725, quoting *Matthews v. Shalala*, 10 F3d 678, 680 (9th Cir 1993). A medical opinion, "even if controverted, can be rejected only with specific and legitimate reasons supported by substantial evidence in the record." *Id*, citing *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).

///

9 – OPINION AND ORDER

The ALJ did not discuss Dr. Nichols's opinion.  Moreover, the ALJ found that Good had "fair concentration," while Dr. Nichols opined that Good had "difficulty" sustaining concentration.  Tr. 305.  Thus, the ALJ's assessment of Good's ability to concentrate is inconsistent with that of Dr. Nichols.  Although the Commissioner argues that the RFC was consistent with the limitations endorsed by Drs. Kennemer and Hennings, the ALJ failed to provide any reasoning, let alone specific and legitimate reasons supported by substantial evidence, for accepting their opinions over that of Dr. Nichols.  Because this court cannot confidently conclude that no reasonable ALJ, when fully crediting Dr. Nichols's testimony, could have reached a different disability determination, the ALJ's failure to discuss Dr. Nichols's opinion constitutes harmful error.

### III.    Adequacy of RFC

Good argues that because the ALJ failed to consider the entire record in assessing the RFC, his decision is not supported by substantial evidence.  This court agrees.

The RFC is the maximum a claimant can do despite his limitations.  *See* 20 CFR § 416.945.  In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate all of the relevant medical and other evidence, including the claimant's testimony.  *Springs v. Colvin*, 2016 WL 525456 at *9 (D. Or Feb. 8, 2016), citing SSR 96-8p, 1996 WL 374184 (July 2, 1996).  The ALJ is responsible for resolving conflicts in the medical evidence and "translating the claimant's impairments into concrete functional limitations in the RFC."  *Martinez v. Colvin*, 2016 WL 270911 at *3 (D. Or Jan. 20, 2016), citing *Stubbs-Danielson v. Astrue*, 539 F3d 1169, 1174 (9th Cir 2008).  "Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE.  *Id*, citing *Osenbrock v. Apfel*, 240 F3d 1157, 1163-65 (9th Cir 2001).  However, the opinion of a VE, which

10 – OPINION AND ORDER

is based on a hypothetical question that does not contain all of a claimant's limitations, cannot be used to support the ALJ's decision. *Embrey v. Brown*, 849 F2d 418, 422-23 (9th Cir 1988). An ALJ's decision is not supported by substantial evidence if the RFC is invalid. *Robbins v. SSA*, 466 F3d 880, 886 (9th Cir 2006).

The ALJ failed to consider all relevant medical and other evidence. Specifically, as stated above, the ALJ failed to consider Good's educational and vocational records, as well as the "other source" opinions contained in them, and the opinion of Dr. Nichols. The ALJ's failure to consider this evidence calls into question the validity of his determination of Good's limitations in the RFC. Because it is unclear whether the RFC accounts for all limitations supported by the record, the hypothetical posed to the VE was legally inadequate. *Embrey*, 849 F2d at 422. This failure cannot be deemed harmless. If the ignored evidence is credited, such as Good's absenteeism, a proper hypothetical would have included limitations that would have been determinative based on the VE's testimony. Thus, the ALJ's step five determination is not supported by substantial evidence. *Robbins*, 466 F3d at 886.

### IV.     Good's Credibility Finding

The ALJ found that Good's statements concerning the intensity, persistence, and limiting effects of his symptoms "not entirely credible" (Tr. 23) and listed several reasons to support his finding. Good argues that the ALJ erred by failing to provide clear and convincing reasons to reject his testimony. Given that the ALJ committed other reversible errors, this court need not address this alleged error.

///

///

///

///

11 – OPINION AND ORDER

## **ORDER**

Because the Commissioner's decision is not supported by substantial evidence, the Commissioner's final decision is REVERSED and REMANDED pursuant to sentence four of 42 USC § 405(g) for further proceedings consistent with this Opinion and Order.

DATED this 18th day of February, 2016.

          _____/s/ Janice M. Stewart_____
          Janice M. Stewart
          United States Magistrate Judge